UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

SHANON A. WOOD,

        Plaintiff,

v.                                                   Case No. 19-cv-619-pp

MILWAUKEE COUNTY, LT. K. JOHNSON,
SHERIFF DAVID J. CLARKE JR.,
JOHN DOE CORRECTIONAL OFFICERS 1-4,
ARMOR CORRECTIONAL HEALTH
SERVICES, INC., and JOHN DOES 5-15.

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT (DKT. NO. 1)**

---

On April 29, 2019, plaintiff Shanon A. Wood filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his constitutional rights by subjecting him to cruel and unusual punishment while he was incarcerated at the Milwaukee County Jail. Dkt. No. 1. The plaintiff also filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. This order resolves that motion and screens the complaint.

**I.    Motion to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

At the time he filed his complaint, the plaintiff listed his address as Riverdale, Georgia. Dkt. No. 1 at 2, 14. Unlike many plaintiffs who sue based on their treatment in custody, the plaintiff was not a pretrial detainee or a prisoner when he filed his lawsuit. This means that the Prison Litigation

Reform Act does not apply to the court's consideration of his application to proceed without prepaying the filing fee.

Under 28 U.S.C. §§1915(a)(1), the court may allow a plaintiff to start a lawsuit without prepaying the filing fee if that person files an affidavit that includes a statement of his assets and indicates that he is not able to pay the filing fee. The plaintiff's affidavit says that is not married, has no children, and has no regular income. Dkt. No. 2 at 1-2. He says that in the twelve months before he filed the lawsuit he had received workers' compensation of $12,800. Id. at 2. The plaintiff reported monthly expenses of $1,150, id., $13.00 in savings and a mortgage balance of $40,000, id. at 3. The plaintiff owns a 1993 Chevy truck worth $500. Id. at 3. He explains that he is injured and can't work, that he has no compensation coming in despite having a monthly mortgage and home expenses and that he relies on friends and family to pay his bills. Id. at 2. The court concludes that the plaintiff is unable to pay the $350 filing fee and $50 administrative fee and will grant the plaintiff's motion.

**II.    Screening the Complaint**

A.    Legal Standard

Federal law requires that in cases where the plaintiff has asked to proceed without prepaying the filing fee, the court must dismiss the lawsuit if it determines that the suit "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A complaint is frivolous, for purposes of §1915(e)(2)(B)(i), if "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may dismiss a case as frivolous

2

if it is based on an "indisputably meritless legal theory" or where the factual contentions are "clearly baseless." Denton, 504 U.S. at 32–33 (quoting Neitzke, 490 U.S. at 327).

The standard for deciding whether to dismiss a case under §1915(e)(2)(B)(ii) is the same as the standard for dismissing a case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). DeWalt v. Carter, 224 F.3d 607, 611–12 (7th Cir. 2000). The complaint must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need not contain "detailed factual allegations," a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "In evaluating whether a plaintiff's complaint fails to state a claim, a court must take the plaintiff's factual allegations as true and draw all reasonable inferences in [her] favor." DeWalt, 224 F.3d at 612. The court must liberally construe a *pro se* plaintiff's allegations, no matter how "inartfully pleaded." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  The Facts in the Complaint

The plaintiff has sued Lt. K. Johnson (a lieutenant with the Milwaukee County Sheriff's Department), David J. Clarke, Jr. (the former sheriff of Milwaukee County), "John Doe" correctional officers 1-4, Armor Correctional Health Services, Inc. and "John Does" 5-15. Dkt. No. 1 at 2-4.

The plaintiff explains that he is legally blind. Id. at 6. He says that between May 24 and May 29, 2017, while he was an inmate in the Mental

3

Health Unit of the Milwaukee County Jail, he was placed on suicide watch. Id. He says that when he arrived, it was so cold in the cell that he was "forced to use his mattress for warmth by lying inside the mattress." Id. He says that the mattress had a "tennis ball sized hole" on its side, was "covered in bodily fluids, and had an offensive odor;" he says it never should have been issued because it was a health hazard. Id. The plaintiff alleges that on contact with the mattress he had "an allergic reaction and [began] to itch." Id.

The plaintiff says that he "continued to request" that the staff address "what had then become a medical issue," but that the staff ignored him (several shifts of staff ignored him). Id. He says that while eventually a member of the staff took the mattress away, it wasn't replaced and he was without a mattress for several hours. Id.

The plaintiff asserts that during this time, his cell became flooded "as a result [of] other inmates in the same unit." Id. The plaintiff says this left him standing barefoot "in toilet water up to his ankles," and that the "cold standing water was left in the cell for an unreasonable amount of time." Id. The plaintiff contends that he was forced "to stand in the cold toilet water every time it became necessary [to] use his own toilet or step out of his bed." Id.

The plaintiff also alleges that when he asked about his pending charges or his release status, "he was falsely told by a Milwaukee County Correctional Officer that he was being held on murder and robbery charges." Id. The plaintiff alleges that he was "falsely" informed that a judge had asked for a sample of his DNA. Id. The corrections officer who made that false claim, the plaintiff says, told him that a court date had been scheduled for thirty days from the date of these events. Id. The plaintiff, who already was suffering from

4

depression and was on suicide watch, suffered "additional undue stress and trauma" at hearing this. Id.

The plaintiff says that he "told all Milwaukee County Correctional staff about the conditions of [his] cell, condition of his skin, and the false claims made by the Correctional Officer. Id. at 7. He asserts that Lt. K. Johnson came to his cell door and took a report of the plaintiff's claims. Id. The plaintiff indicates that "several" members of the jail staff witnessed what was happening and were told by him of "the harsh conditions in his cell." Id. He says, however, that "the entire staff ignored all the Plaintiff's . . . complaints and requests for more humane conditions and treatment." Id.

The plaintiff alleges that subsequently he was placed in "a unit classified as the 'Hole,'" out of retaliation; he says this caused him more distress and anxiety. Id.

The plaintiff says that "later," a ticket was mailed to his home address "stating he had destroyed three mattress[es] during his confinement at the Milwaukee County Jail." Id.

The plaintiff alleges that as a result of these events, he "suffers ongoing anxiety, sleep depr[i]vation, night terrors, depression, [and] panic attacks." Id. He says he is taking two medications and seeing a mental health professional (starting March 27, 2019) to help him manage his "condition." Id. at 8. The plaintiff relates that he has trouble functioning and maintaining a daily routine as a result of the side effects of the medication, and he says he had no history of needing medication before. Id. The plaintiff seeks "a change in policy regarding the treatment of persons with mental health issues." Id. at 8. He also seeks money damages of $200,000 for mental health treatment. Id.

5

C. <u>Analysis</u>

Under the due process clause of the Fourteenth Amendment, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979). <u>See also</u>, <u>Smith v. Dart</u>, 803 F.3d 304, 309 (7th Cir. 2015) ("In the context of a conditions of confinement claim, a pretrial detainee is entitled to be free from conditions that amount to 'punishment . . . .'"). "An adverse condition amounts to a constitutional deprivation when it results in the denial of a basic human need, *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012), such as 'adequate food, clothing, shelter, and medical care,' *Farmer* [*v. Brennan*,] 511 U.S. [825], 832 [(1994)]." <u>Id.</u> at 309-310. To prove a conditions-of-confinement claim, a plaintiff must show both that the conditions of his confinement amounted to punishment and that the people who subjected him to those conditions acted "with a sufficiently culpable state of mind." <u>Tesch v. Cty. of Green Lake</u>, 157 F.3d 465, 473 (7th Cir. 1998) (citations omitted). The "state of mind" that the plaintiff must show is that the jail official acted with "deliberate indifference" to their duty to provide him with humane conditions of confinement. <u>Id.</u> at 475.

Jail officials who expose a detainee to cold *may* violate his constitutional rights; courts should

> examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold.

<u>Dixon v. Godinez</u>, 114 F.3d 640, 644 (7th Cir. 1997).

The plaintiff alleges that when he arrived in his cell, it was cold. He does not say how cold it was, or how long the cold lasted. He had an alternative means to stay warm—he could wrap himself in his mattress. But the plaintiff alleges that that alternative means was not adequate—it had a hole in it, was soaked in bodily fluids and had a strange smell. The plaintiff complained; eventually—the plaintiff does not say how long—jail staff removed the defective mattress, but he says it was hours before he was brought another one. It appears that at the same time, the plaintiff's cell was flooded with ankle-deep, cold toilet water. While it is not clear how long these conditions lasted, and whether all of them—cold, disgusting and ineffective mattress, a flooded cell—happened at the same time, the plaintiff has stated sufficient facts at the pleading stage to support his claim that he was subjected to unconstitutional conditions of confinement for possibly as long as five days.

The plaintiff says that he told Johnson and several unknown jail staff members about these conditions—that some of them witnessed the conditions—but that they did nothing about the conditions. It's not entirely clear which conditions the plaintiff means—for example, he himself says that after complaining about the mattress several times, someone *did* come take it away, and eventually, someone *did* bring him a new mattress. But at the screening stage, the court will allow the plaintiff to proceed on a conditions-of-confinement claim against Johnson and the four John Doe defendants he named on page 3 of the complaint.

The plaintiff alleges that he told Johnson and John Doe Correctional Officers 1-4 of his allergic reaction to the allegedly unsanitary mattress. For a plaintiff to state a claim against a corrections officer for deliberate indifference

7

to a serious medical need, the plaintiff "first must demonstrate that the condition was objectively serious." Thomas v. Cook Cty. Sheriff's Dep't, 604 F.3d 293, 301 (7th Cir. 2010) (citing Hayes v. Snyder, 546 F.3d 516, 522 (7th Cir. 2008)). An objectively serious medical condition is "one that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" Id. Second, the plaintiff must show that the corrections officer had subjective knowledge of the risk to the inmate's health, and that the officer disregarded that risk. Id. (citing Collins v. Seaman, 462 F.3d 757, 761 (7th Cir. 2006)).

It is questionable whether the plaintiff has alleged an objectively serious medical condition; he says only that he "began to itch." He doesn't say how severe the allergic reaction was, or how long it lasted, or whether it was resolved when he got a new mattress. The plaintiff also generally alleged that his medical and psychological needs were "deliberately ignored and neglected" while he was in the jail, although he doesn't say how. But because the plaintiff is representing himself, and because he has alleged that he had a medical condition that Johnson and the four John Does ignored, the court will allow him to proceed against them on a deliberate-indifference-to-medical-needs claim.

The plaintiff says that he was placed in "the Hole"—presumably segregation—"as retaliation." "To prevail on a First Amendment retaliation claim, [the plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants'

8

decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 545 (7th Cir. 2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir. 2008)). The court will not allow the plaintiff to proceed on a retaliation claim. He does not say who ordered him placed in segregation, or why he believes that the reason he was put there was because he complained about his conditions of confinement.

The plaintiff alleges that a Milwaukee County correctional officer lied to him about the nature of his pending charges, the likely length of his detention at the jail and the judge requesting his DNA sample. Lying is not necessarily a constitutional violation. Larry v. Meisner, No. 16–CV–1108, 2016 WL 5390882, at *5 (E.D. Wis. Sept. 27, 2016). The plaintiff says, however, that the lies exacerbated his depression, anxiety and stress. Perhaps one could argue that deliberately lying to a detainee on suicide watch constitutes a condition that amounts to punishment. The court will allow the plaintiff to proceed on a conditions-of-confinement claim against John Doe correctional officer. (The plaintiff does not say whether this officer was one of the four who witnessed and ignored his other conditions of confinement. In case this officer was not one of those, the court will allow him to proceed against a defendant whom the court will call "John Doe Correctional Officer 16.")

The court will dismiss former sheriff Clarke as a defendant in his individual capacity, that claim is insufficient. The plaintiff has not alleged that Clarke personally violated his constitutional rights, or even that he knew that other people were doing so. The plaintiff appears to have sued Clarke solely because Clarke was the sheriff at the time of the events the plaintiff describes—in other words, because Clarke was the supervisor of Johnson and the other

9

John Doe defendants. A supervisor cannot be held liable for constitutional violations committed by his subordinates unless the supervisor, "with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) (quoting Lanigan v. Vill. of E. Hazel Crest, Ill., 110 F.3d 467, 477 (7th Cir. 1997)). "That is, 'to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct.'" Id. Because the plaintiff has not alleged that Clarke was personally involved in the events that occurred in May of 2017, the court will dismiss him as a defendant.

The plaintiff also has sued Armor Correctional Health Services, Inc. and John Does 5-15. The court assumes that John Does 5-15 are Armor employees, given that the plaintiff included them in his description of Armor as the defendant. The plaintiff does not say so, but Armor is the medical services provider with whom the jail contracts. See, *e.g.*, Lee v. Armor Correctional Health Serv's, No. 19-cv-614-JPS, 2019 WL 6071586, at *3 (E.D. Wis. Nov. 15, 2019). A private corporation "cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy of the corporation itself." Shields v. Ill. Dep't of Corrections, 746 U.S. 782, 789 (7th Cir. 2014). Supervisory liability does not apply to private corporations under §1983. Id.

The plaintiff has not made *any* specific allegations against Armor or any of its employees. He does not mention doctors or nurses or social workers. He makes allegations only against jail staff, specifically correctional officers. The court will not allow the plaintiff to proceed against Armor or John Does 5-15.

10

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **DISMISSES** Sheriff David J. Clarke Jr., Armor Correctional Health Services, Inc. and John Does 5-15 as defendants.

The court **ORDERS** that, under the informal service agreement between Milwaukee County and this court, copies of the plaintiff's complaint and this order are being electronically sent today to Milwaukee County for service on the Milwaukee County defendants Milwaukee County, Lt. K. Johnson, and John Doe Correctional Officers 1-4 and John Doe Correctional Officer 16.

The court **ORDERS** that, under the informal service agreement between Milwaukee County and this court, defendants Milwaukee County, Lt. K. Johnson, John Doe Correctional Officers 1-4 and John Doe Correctional Officer 16 must file a responsive pleading to the plaintiff's complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that the plaintiff must mail all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

Dated at Milwaukee, Wisconsin, this 30th day of July, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**