SHANNON A. WOOD,

        Plaintiff,

v.                                            Case No. 19-CV-619

MILWAUKEE COUNTY, *et al.*,

        Defendants.

## DECISION AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Shannon A. Wood, who is representing himself, brings this lawsuit under 42 U.S.C. § 1983. (Docket # 1.) Wood alleges that the defendants subjected him to objectively unreasonable conditions of confinement. Before me is defendants' motion for summary judgment. (Docket # 20.) They argue that Wood did not exhaust the available administrative remedies before initiating this lawsuit. For the reasons stated below, I will deny the defendants' motion for summary judgment.

## FACTS

### 1. *Preliminary Matters*

The defendants state that Wood failed to follow Civil Local Rule 56(b)(2), which requires Wood to file a memorandum of law and a response to the moving party's statement of facts that is supported by citations to the case record. (Docket # 35 at 1.) However, district courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Grady v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). As such, I will consider

the information contained in Wood's submissions where appropriate in deciding defendants' motion.

2.  *Grievance Process at Milwaukee County Jail*

The Milwaukee County Jail has an administrative process entitled the "Grievance Process" for addressing inmate complaints. (Docket # 21, ¶ 5; Docket # 24-11.) The Grievance Process is set forth in the Inmate Handbook which all inmates receive upon being booked into the Jail. (Docket # 21, ¶ 24.) To submit a complaint to address issues like cell conditions or staff behavior, an inmate must submit a Grievance Form. (*Id.* ¶ 22.) In 2017, which was when Wood was confined at the Jail, the Grievance Process required inmates to submit a paper form using a box that was in each housing pod. (*Id.* ¶ 23.) The Grievance Process is silent on deadlines to submit a grievance or the process on how to submit a grievance once an inmate has been released or moved to another facility.

The defendants state that all inmates receive an Inmate Handbook when they are booked, so Wood must have received a Handbook. (*Id.* ¶ 24.) In 2017, the Grievance Process was also explained in a video generally played on a continuous loop in the room where inmates are booked at the Milwaukee County Criminal Justice Facility. (*Id.* ¶ 25.)

3.  *Wood's Underlying Allegations and Attempts to Exhaust his Administrative Remedies*

Wood was allowed to proceed on a conditions of confinement claim alleging that the defendants allowed him to stay in unsanitary conditions during his two day stay at the Jail between May 25, 2017 and May 27, 2017. (Docket # 21 at ¶¶ 1, 4.) Wood was released for lack of probable cause on May 27, 2017. (*Id.* ¶ 4.) The defendants state that there is no record of Wood using the Grievance Process to alert them to issues with his mattress, the cold temperature of his cell, the fact that his cell was flooded, or that various Jail staff

ignored his verbal complaints of these conditions. (Docket # 21 at ¶ 29.) The defendants highlight that on the *pro se* complaint form Wood used to file his complaint, he checked "no" to both questions inquiring whether he filed a grievance about the facts or claims in his complaint. (*Id.* ¶ 30; Docket # 1 at 9.)

Wood states that he repeatedly asked for help with his "issues, grievances, or problem [*sic*] he faced," but no one in the Jail would help him. (Docket # 32 at ¶¶ 21, 26-28.) At one point, Wood demanded that he speak to a supervisor, and Wood asserts that in response to his demands, defendant Lt. K. Johnson came to his cell and wrote a report. (*Id.* ¶¶ 29, 31.) Wood also states at this time that he "verbally expressed his need to file a grievance." (*Id.* ¶ 31.) Johnson, instead of addressing the cell conditions, wrote Wood a citation for a destroyed mattress. (*Id.*; Docket # 32-1 at 4.) The defendants dispute that Johnson ever visited Wood in his cell. (Docket # 21 at ¶ 15.)

Wood also states that he was never given a handbook and never saw a video about the grievance process, so he was unaware of the grievance process. (Docket # 32 at ¶¶ 24–25.) Wood further indicated in his complaint that he was not informed of his right to file a grievance or the existence of a grievance procedure or policy. (Docket # 1 at 10.)

Wood was also on suicide watch upon his arrival at the Jail and, according to Wood, "a person on suicide watch may not be in the best position to attempt to file a grievance or get the proper help to do so." (*Id.* ¶ 24.) Additionally, in his complaint, Wood alleges that he was legally blind. (Docket # 1 at 6.) However, he does not dispute that he failed to notify Jail staff of his impairment and does not explicitly allege in his response materials that his impairment impacted his ability to read or write. (Docket # 32 at ¶ 33.)

The defendants note that the Grievance Process requires Jail staff to assist inmates who are physically unable to complete the forms themselves. (Docket # 21 at ¶ 27.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

4

## ANALYSIS

  1.  *Administrative Exhaustion Requirement*

The Prison Litigation Reform Act states in part that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The exhaustion requirement gives prison officials an opportunity to resolve disputes before being hauled into court, and it produces a "useful administrative record" upon which the district court may rely. *See Jones v. Bock*, 549 U.S. 199, 204 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 94-95 (2006)). The exhaustion rule also promotes efficiency, because claims generally are resolved more quickly by an agency than through litigation in federal court. *Woodford*, 548 U.S. at 89. Accordingly, exhaustion must be complete before filing suit. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (finding that an inmate failed to exhaust his administrative remedies when he filed suit instead of taking his grievance to the appropriate review board).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). A prisoner is required to "properly use the prison's grievance process prior to filing a case in federal court." *Id.* "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). An inmate can overcome his failure to exhaust his administrative remedies only where he can demonstrate that the grievance process was unavailable to him. *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). A grievance process may be unavailable where "(1) prison officials are 'consistently unwilling to provide any relief to aggrieved inmates'; (2) the administrative

scheme is 'so opaque that it becomes, practically speaking, incapable of use;' or (3) prison administrators take affirmative action to thwart use of the grievance process," but these are "only examples, not a closed list." *Ramirez*, 906 F.3d at 538 (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016)). Indeed, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end." *Ross*, 136 S. Ct. at 1859. The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011).

  2. *Application to This Case*

Taking the evidence in the light most favorable to Wood, there are several factors that indicate the Jail's Grievance Process was unavailable to him. First, the Grievance Procedure is silent on a deadline for filing a grievance or the procedure to file a grievance both generally and in the event of release from the Jail or transfer to another facility. Thus, Wood was not informed as to how he could have filed a grievance to exhaust his administrative remedies after his release, nor was he put on notice that he needed to file a grievance within a certain time period during his stay at the Jail. This renders the process unavailable to him. *See White v. Bukowski*, 800 F.3d 392, 396–97 (7th Cir. 2015) (holding that administrative remedies are unavailable where an inmate was "uninformed about any deadline for filing a grievance").

Second, Wood was detained for only two days, and during his two day detainment he was on suicide watch for the vast majority of the time. Typically, detainees on suicide watch are not allowed any sort of property, including writing materials. Wood, then, would not have been physically able to file a grievance on his own. Where inmates are physically prevented from filing grievances, the process is unavailable. *See Hurst v. Hantke*, 634 F.3d

6

409, 412 (7th Cir. 2011) ("[A] remedy is not 'available' within the meaning of the Prison Litigation Reform Act to a person physically unable to pursue it."). The defendants admit that the Jail's procedure requires staff to assist any inmate who is physically unable to file a grievance; however, there is no evidence that staff attempted to do so in Wood's case. As such, the defendants have failed to carry their burden.

Third, the defendants have not shown that Wood knew about the Grievance Process. While they state that it was standard practice to give all inmates a handbook that contained the process when they are booked, there is no evidence that Wood received one. Also, merely stating that there was a video playing on loop in the general booking area is insufficient to demonstrate that Wood was informed of the process. Where defendants do not produce evidence showing that a plaintiff was informed of the grievance process, they do not meet their burden of demonstrating that administrative remedies were exhausted. *See Hernandez v. Dart*, 814 F.3d 836 (7th Cir. 2016). On this record, the defendants' motion for summary judgment on exhaustion grounds is denied.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that that the defendants' motion for summary judgment (Docket # 20) is **DENIED**. The court will issue a separate amended scheduling order resetting the deadlines for discovery and dispositive motions at a later date.

7

Dated at Milwaukee, Wisconsin this 15th day of June, 2021.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge